IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Sherry Thompson, ) | |
| ) | Civil Action No. 8:04-22998-PMD-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to obtain judicial review of a final decision of the Commissioner of the Social Security Administration that the plaintiff was not entitled to supplemental security income benefits.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for supplemental security income (SSI) on October 26, 2000, under Title XVI of the Act. (Tr. 94-97.) Plaintiff's claim was denied initially and upon reconsideration. (Tr. 75-78, 83-84.) Following a hearing (Tr. 30-65), an Administrative Law Judge (ALJ) found that the plaintiff was not disabled. (Tr. 13-25.) On October 5, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 6-8.) Thus, the ALJ's decision became final. The plaintiff exhausted her

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

administrative remedies, and this case is now ripe for judicial review under section 205(g) of the Act.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge (verbatim):

 1. The claimant has not engaged in substantial gainful activity since May 20, 2000, her alleged disability onset date.

 2. The medical evidence establishes the claimant's diagnosed obesity; mild degenerative changes of the left knee; pulmonary problems; major depressive disorder, recurrent; borderline intellectual functioning; post traumatic stress disorder; and personality disorder, NOS, with borderline features are "severe" impairments, as defined in the regulations, but not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

 3. The claimant has medical impairments that could reasonably cause some of her subjective symptoms; however, the evidence does not substantiate her allegations concerning the level of severity of physical limitations, pain, or restrictions due to mental disorder. Therefore, such allegations are less than fully credible.

 4. The claimant has retained the residual functional capacity to perform work with restrictions which require simple, routine work; a low stress, supervised environment; no interaction with the public or "team"-type interaction with co-workers; no lifting or carrying over 10 pounds; no standing and/or walking over 2 hours in an 8-hour workday; limited stooping, twisting, crouching, kneeling, and climbing of stairs or ramps; no crawling, balancing, or climbing of ladders or scaffolds, no foot pedals or other controls with either lower extremity; and an environment free from poor ventilation, dust, fumes, gases, odors, and extremes of humidity and temperature.

 5. The claimant is unable to perform the requirements of her past relevant work as a product packer or inspector.

    6.    The claimant has the residual functional capacity to perform a significant range of sedentary work.

    7.    The claimant is 43 years of age and has a high school education.

    8.    Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.27 as a framework for decisionmaking, there are a significant number of jobs in the national economy that she can perform. Examples include the unskilled, sedentary exertional level jobs of small products assembler and product packer/sorter, with over 323,000 such jobs in the national economy.

    9.    The claimant was not under a "disability," as defined in the Social Security Act and regulations.

(Tr. 24-25.)

## BACKGROUND

The plaintiff was 43 years old on the date of the ALJ's decision (Tr. 33, 66, 68, 70, 94). The plaintiff alleged disability since April 1998, due to problems with her breathing, left knee, back, and stomach; as well as the need for a wheelchair; and depression and anxiety (Tr. 103, 119). The plaintiff has a GED and past work experience as a poultry de-boner, product packer, and inspector (Tr. 55-56, 122, 128-33, 135-37). The medical evidence indicates that the plaintiff has a full scale I.Q. of 69 or lower, which is in the mildly mentally retarded range of intellectual development.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

>has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial

evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff's principal contention is that the ALJ failed to recognize that medical evidence established the presence of a disabling mental impairment listed in section 12.05C of Appendix 1 to 20 C.F.R. § 404, Subpart P. Section 12.05 states in part:

> 12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . .
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale I.Q. of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitations of function;. . . .

5

There are two requirements under Section 12.05C.  *See Boatwright v. Secretary, Dept. of Health and Human Services*, 1989 WL 79720, at *2 (4th Cir. July 12, 1989).  If both requirements are met, then the plaintiff is considered disabled and entitled to benefits.  *See id. at *3;* 20 C.F.R. § 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.")  First, a claimant's I.Q. score must come within the listed range of 60 to 69 inclusive, and second, she must be able to demonstrate an additional significant limitation.  *See id.* at *2.  It is undisputed that the plaintiff suffers several severe mental and physical impairments and, therefore, satisfies the second requirement of Section 12.05C.[2]  (Mem. Supp. Comm. Decision at 17.)

The plaintiff contends that she also satisfied the first prong by demonstrating that she had a full scale I.Q. Score within the required range.  On May 26, 2000, Dr. Robert W. Noelker, Ph.D. issued a psychological report concerning the plaintiff.  In that report, he concluded that the plaintiff had a full scale I.Q. of 68.  (Tr. 176.)  The following year, on March 29, 2001, a Dr. William Link, Ph.D determined that the plaintiff had a verbal I.Q. of 67, a performance I.Q. of 77, and a full scale I.Q. of 69.  (Tr. at 185.) Both doctors expressly concluded that her overall I.Q. placed her within the mild range of mental retardation.  This evidence is uncontradicted, undisputed, and strongly suggestive that the plaintiff meets the requirements of the Section 12.05C.

---

[2] The onset of the plaintiff's mental impairment must have occurred before the age of 22.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Respondents do not contend that the plaintiff's mental capacity diminished to its current status after she turned 22, and "in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant." *See Luckey v. U.S. Department of Health and Human Services*, 890 F2d 666 (4th Cir. 1989). Although she has a twelfth-grade education, the plaintiff attended special education classes. (Tr. 174.)

6

The respondents contend that the ALJ had substantial evidence to reject the undisputed test scores of Dr. Link and Dr. Noelker because (a) Dr. Noelker found that the plaintiff had borderline intellectual functioning and (b) Dr. Link concluded that the plaintiff's performance IQ of 77 was more likely representative of her functional levels than her full scale score of 69.  The Court believes these arguments are of no consequence.

Both doctors performed an I.Q. analysis of the plaintiff and concluded that her I.Q. fell within Section 12.05C's required range.  There is no dispute but that the tests were valid.  There is no allegation that the plaintiff was not performing her best, under the influence of alcohol or drugs, or otherwise attempting to alter the results of the test.  *See, e.g.*, *Powell v. Barnhart*, 2005 WL 1926613 (W.D. Va. 2005) (inebriation, exaggeration, and lack of cooperation).  In fact, Dr. Noelker specifically noted that the plaintiff "was cooperative, to the extent of her ability." (Tr. 175.)  Moreover, where more than one IQ level is derived from the testing, e.g., verbal, performance and full IQ, the lowest of these should be used for purposes of Section 12.05C.  *See Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir.1986).  It would, therefore, be improper to use Dr. Link's performance score of 77 over the other full and verbal scores of Dr. Link and Dr. Noelker that, in fact, fell within the relevant range.

Notwithstanding, the ALJ was not required to accept the I.Q. scores.  *See id.*  "The listing requires the Secretary to take into account the intelligence test and the medical report. Moreover, the test results must be examined to assure consistency with daily activities and behavior."  *Id*.  Although the ALJ made some analysis of the plaintiff's daily activities and behavior, the Court cannot determine on what basis he rejected her I.Q. scores.

The evidence tends to suggest that her activities and behavior were in fact consistent with the scores.  For example, Dr. Noelker noted that because of her poor reading skills he had to administer the tests to her by an alternative method.  Dr. Noelker further noted that

7

she was illiterate and that she was a "multiply-handicapped special needs adult." Dr. Noelker strongly recommended that because of her wide variety of intellectual and affective difficulties, any services offered to her by the Department of Social Services should be provided in a one-on-one setting. Dr. Noelker stated that her difficulties in functioning were tied to her low intellectual functioning, along with her illiteracy and her extremely poor tolerance for stress/frustration. He found that she was unable to satisfactorily perform simple serial calculations; that she suffered with deficits in short-term and recent memory; and that she was so intellectually handicapped that she could barely tend to her own needs. He ultimately concluded that she was "a good candidate for disability." (*See generally* Tr. 174-78.)

The Court concedes that Dr. Link's assessment was not so dire and concluded that her behavior and activities reflected an actual functional ability above what her I.Q. scores reflected. For emphasis, Dr. Link concluded that the plaintiff would be able to "manage" any benefits awarded.

The Court, however, will not weigh these opinions. The ALJ must provide reasons for rejecting the I.Q. scores, which otherwise appear to indicate that the plaintiff has met the medical listing in Section 12.05C, whether on these medical opinions or other evidence of record. It is not enough that the ALJ recite activities which the plaintiff can perform but he must explain how the performance of such activities undermines the credibility of the objective test scores. Otherwise, benefits are in order. The conclusion of Dr. Link that her performance score of 77 better reflected her functional capacity is, alone, insufficient to reject consistent scores obtained by two separate doctors.

## **CONCLUSION AND RECOMMENDATION**

Therefore, it is recommended that the Commissioner's decision be reversed, with a remand of the cause to the Commissioner for further proceedings as set forth above.

                                      s/Bruce H. Hendricks
                                      United States Magistrate Judge

January 18, 2006
Greenville, South Carolina